# Exhibit 74

| | |
|---|---|
| From: | Michael Ben-Jacob <michael.ben-jacob@kayescholer.com> |
| To: | John van Merkensteijn <jhvm@argremgt.com>;Adam Larosa <alarosa@argremgt.com>;Matthew Stein <mstein@maplept.com>;"Jérôme LHOTE" <jlhote@maplept.com>;Richard Markowitz <rmarkowitz@argremgt.com> |
| CC: | Wells, Peter <peter.wells@kayescholer.com>;Kathleen Wechter <kathleen.wechter@kayescholer.com> |
| Sent: | 6/20/2014 2:25:24 PM |
| Subject: | Michelle -- Disqualified Persons Memorandum -- Final |
| Attachments: | Exhibit A (Michelle Memo).pdf; Michelle.pdf |

All,

Attached for your records is our finalized memorandum discussing Disqualified Person issues as they relate to the Michelle structure. Please let me know if you have any questions.

Regards.

mbj

\*\*\*

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michael Ben-Jacob
KAYE SCHOLER LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8310 | F: +1 212.836.6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 212.836.8310) and delete the message, along with any attachments, from your computer. Thank you.

# Michelle Structure



61405251

1

HIGHLY CONFIDENTIAL          PRIVILEGED - SUBJECT TO 502(d) ORDER          JHVM_0010572

# KAYE SCHOLER LLP

Michael Ben-Jacob
212.836.8310
michael.ben-jacob@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212.836.8000
Fax 212.836.6310
www.kayescholer.com

# MEMORANDUM

| | | |
|---|---|---|
| **TO:** | John H. van Merkensteijn, III<br>Matthew R. Stein<br>Jerome Lhote<br>Richard Markowitz<br>Adam LaRosa | PRIVILEGED & CONFIDENTIAL<br>ATTORNEY CLIENT COMMUNICATION |
| **FROM:** | Michael Ben-Jacob | |
| **DATE:** | June 20, 2014 | |
| **SUBJECT:** | Michelle Investments: Pension Plan Trades: Transactions with "Disqualified Persons" | |

### Facts

The Michelle Investments LLC Pension Plan (the "Michelle Plan") used the structure referred to as the "Michelle Structure" to implement certain trading transactions as described herein. The chart attached hereto as Exhibit "A" depict the Michelle Structure. The first part of this memorandum outlines our understanding from discussions with you of the facts and set-up of the Michelle Structure and the organization of the associated structure as well as the trading activity and related operations of the structure. The second part of this memorandum provides an analysis of certain issues related to transactions with "disqualified persons" under the Internal Revenue Code of 1986 (the "Code").

Michelle

CHICAGO · FRANKFURT · LONDON · LOS ANGELES · NEW YORK · PALO ALTO · SHANGHAI · WASHINGTON, DC · WEST PALM BEACH

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                          - 2 -                               June 20, 2014
Richard Markowitz
Adam LaRosa

I. **Michelle Structure**

    A. **Set-Up and Organization**

Michelle Investments LLC, a Delaware limited liability company ("Michelle LLC"), was formed on or about November 15, 2007. John H. van Merkensteijn, III, Matthew R. Stein, Richard Markowitz and Jerome Lhote (the "Members") are equal members of Michelle LLC. The Members also engage in unrelated investment and other business activities through other entities, including Argre Management LLC ("Argre"), another investment firm operating from the same offices as Michelle LLC. Each of the Members own 19.75% of Argre; Adam LaRosa owns the remaining 21% interest.

On or about May 10, 2012, Michelle LLC established the Michelle Plan, which is a prototype 401(k) plan. As a prototype plan, the Michelle Plan is intended to be qualified under Section 401(a) of the Code.[1] We understand that the service provider that maintains this prototype plan has sought and obtained an IRS response letter regarding the tax qualified status of the form of the plan. The Members jointly act as the trustees of the Michelle Plan pursuant to a trust agreement.

    B. **Trading and Related Operations**

Solo Capital Partners LLP ("Solo"), a U.K. based financial services firm, presented the Michelle Plan trustees with the trading strategy discussed below. Solo is authorized and regulated in the U.K. by the Financial Services Authority, but is not regulated by any regulatory or quasi-regulatory agency in the United States. Solo is independent of Michelle LLC, Argre,

---

[1] All "Section" references herein are to the Code and the Treasury Regulations thereunder.
Michelle

**HIGHLY CONFIDENTIAL   PRIVILEGED - SUBJECT TO 502(d) ORDER**                                    JHVM_0010574

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                  - 3 -                                  June 20, 2014
Richard Markowitz
Adam LaRosa

the Members, and any affiliated entity of any of them and there is no common ownership between Solo, Michelle LLC, Argre or any such entity.  We understand that (i) Solo provided the entire structure of the trading strategy to the trustees and (ii) the trustees had little or no ability to negotiate the financial terms of the arrangement, which were basically the same, or more favorable to the Michelle Plan, as arrangements that existed between Solo or other providers which engage in this trading strategy and unrelated third parties who were and are engaging in similar trading activities with Solo or those other providers.

The investment and trading strategy outlined by Solo was as follows: the Michelle Plan would enter into a custodial agreement with Solo pursuant to which (i) the Michelle Plan would transfer assets to a custodial account of which Solo was the custodian, (ii) Solo provided the Michelle Plan trustees with information about the securities of certain publicly-traded companies on certain foreign (non-U.S.) stock exchanges, (iii) on or before the ex-dividend date for such shares, the Michelle Plan would direct Solo to purchase shares of some or all of the companies presented by Solo[2], (iv) Solo would guarantee the Michelle Plan's trades vis-à-vis a third-party broker, allowing the Michelle Plan to make highly leveraged trades, (v) the purchased shares would be held in the custodial account, (vi) the Michelle Plan would take a short futures position in shares of such company by selling to an unrelated third party a cash-settled single stock future, which would not expire until at least one day after the dividend record date of the purchased shares, (vii) on behalf of the Michelle Plan, a third party would submit a tax reclamation request

---

[2] If some of the shares were too thinly-traded or otherwise deemed unacceptable by the trustees, the trustees utilized other shares.  This was typically done after additional consultations with Solo.

Michelle

HIGHLY CONFIDENTIAL   PRIVILEGED - SUBJECT TO 502(d) ORDER                                      JHVM_0010575

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                - 4 -                         June 20, 2014
Richard Markowitz
Adam LaRosa

to the appropriate authorities with respect to the gross dividend amount previously withheld on the sale by such authorities, (viii) the Michelle Plan would receive a payment equal to the net dividend amount of the shares it held, (ix) the Michelle Plan would cause Solo to sell the shares it holds in the market and settle the futures contract for cash, and (x) the Michelle Plan would remit a specified percentage of the net dividend amount to Solo (which would then pay significant fees and expenses incurred in the transactions described above which fees are separate from third party professional and other fees paid by the Michelle Plan related to such transactions.)  The purpose of the short futures position was to hedge against loss of principal in order to minimize or eliminate the economic risk of holding the shares.

The Michelle Plan simultaneously entered into a securities lending agreement with a third party under which it lent securities in exchange for cash.  We understand that (a) the securities lending arrangements embodied in a number of documents are typical of those entered into by organizations in the United Kingdom and comply with United States securities lending regulations, (b) the purpose of this arrangement was to generate the necessary liquidity to implement the trades, and (c) investing in this arrangement does not guarantee payments to Solo or indemnify Solo, and no payments or other benefits were received by the Michelle Plan, Michelle LLC, the Members or their affiliates.

As noted, while the decisions as to which securities to purchase are solely within the purview of the Michelle Plan trustees, they did take into account the recommendations of Solo. The trading orders were executed by Mr. LaRosa pursuant to a power of attorney executed by the Michelle Plan granting him authority to execute trades on behalf of the Plan.  Mr. LaRosa

Michelle

HIGHLY CONFIDENTIAL   PRIVILEGED - SUBJECT TO 502(d) ORDER                JHVM_0010576

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                    - 5 -                                    June 20, 2014
Richard Markowitz
Adam LaRosa

receives compensation of $5,000 for acting as attorney-in-fact and is not separately indemnified by any party (and does not receive benefits or compensation from any party other than this payment) for his actions pursuant to the power of attorney.

Under the Custodial Agreement with Solo, the Michelle Plan pays fees to Solo as per the schedule attached to the Custodial Agreement. The documents for the transaction indicate that, of the gross amount payable to the Michelle Plan, the Michelle Plan retained approximately 34% and the remaining 66% was paid to Solo. Solo was responsible for paying significant costs and expenses associated with the transaction, including trading commissions, legal fees, brokerage fees, accounting fees, tax reclaim service fees, custodial service fees, leverage providing fees and guaranty fees. Solo does not break down its expenses so that investors such as the Michelle Plan are not provided with a breakout of what portion of the 66% is compensation to Solo and its affiliates and what portion pays for expenses paid to other third party service providers. The Michelle Plan paid its own fees for third party services (legal, accounting, etc.) related to the transaction.

While the documents provide that the 66% paid to Solo is a "fee" to Solo, the understanding of the parties at the time the transaction was entered into was that Solo and the Michelle Plan were instead effectively engaged in a partnership under which the profits would be shared between them under the above profit allocation, with Solo being responsible for all of the partnership's expenses.

Michelle

HIGHLY CONFIDENTIAL  PRIVILEGED - SUBJECT TO 502(d) ORDER                                    JHVM_0010577

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                         - 6 -                                         June 20, 2014
Richard Markowitz
Adam LaRosa

II. **Discussion of Transactions with Disqualified Persons**

    A. **Transactions with Disqualified Persons**

A transaction between a retirement plan subject to Section 4975 of the Code and a "disqualified person" (described in Appendix A) that is prohibited under section 4975 of the Code (described in Appendix A) will be subject to the tax under Section 4975 of the Code (described below)[3] unless it meets the requirements of a prohibited transaction exemption under Section 4975. The Michelle Plan is subject to Section 4975 of the Code but should not be subject to ERISA since, as we understand, it does not cover employees and only covers the Members.

Based on the facts above and the discussion below, we conclude that an argument can be made that the "service provider exemption" should apply to these transactions as described herein. In order to prevail in such an argument, one would have to prove, as discussed below, that the fees paid by the Michelle Plan were reasonable fees.

    B. **Taxes under Section 4975**

Section 4975 of the Code imposes a tax of 15% of the "amount involved"[4] on any prohibited transaction for each year (or part of a year) in the "taxable period". The taxable period begins on the date the prohibited transaction occurs and ends on the earliest of (i) the date

---

[3] The penalty for a prohibited transaction involving an individual retirement account ("IRA") is generally that the IRA ceases to be an individual retirement account as of the first day of the taxable year in which the prohibited transaction occurred, and the IRA is treated as if there were a distribution on that first day in an amount equal to the fair market value (on such first day) of all assets in the account (on such first day).
[4] The "amount involved" generally is defined in Section 4975(f)(4) as the greater of the amount of money and the fair market value of the other property given or received. However, in the case of services described in the exemptions in Section 4975(d)(2) (for compensation for certain reasonable services) and (d)(10) (for certain reasonable compensation and expenses) the "amount involved" is only the compensation that is excessive.

Michelle

HIGHLY CONFIDENTIAL  PRIVILEGED - SUBJECT TO 502(d) ORDER                    JHVM_0010578

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                    - 7 -                              June 20, 2014
Richard Markowitz
Adam LaRosa

of mailing a notice of deficiency with respect to the 15% tax, (ii) the date on which the tax is assessed or (iii) the date on which the prohibited transaction is corrected[5]. Section 4975 provides that this tax is payable by any disqualified person who participates in the prohibited transaction other than a fiduciary acting only as such[6]. An additional tax of 100% of the amount involved is imposed on any such disqualified person if the initial 15% tax is imposed and the transaction is not corrected within the taxable period.

Correcting a prohibited transaction means to undo the transaction to the extent possible and in any case to place the plan in a position not worse than that in which it would have been if the disqualified person had acted under the highest fiduciary standards[7].

C.   **Discussion of Prohibited Transactions**

Based on the definition of "disqualified person" and the activities of the respective entities as described above, we believe that none of the entities with which the Michelle Plan has entered into securities lending arrangements or sold cash-settled stock futures to, or any of the publicly-traded companies from which the dividends are paid should, as a result of these activities, become a disqualified person with respect to the Michelle Plan. However, Solo, Mr. LaRosa and the party which files the tax reclaim forms will be disqualified persons because of their performance of services with respect to the Michelle Plan, as described herein.[8]

---

[5] Section 4975(f)(2) of the Code.
[6] Therefore, it is possible that if a transaction resulted in more than one disqualified person being liable, each would have to pay the 15% excise tax.
[7] Section 4975(f)(5).
[8] We understand that none of these publicly traded companies or the entities with which the securities lending arrangements are entered into have any other relationship to the Michelle Plan which would result in them being treated as a disqualified person under Section 4975 of the Code.

Michelle

HIGHLY CONFIDENTIAL  PRIVILEGED - SUBJECT TO 502(d) ORDER                    JHVM_0010579

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                            - 8 -                            June 20, 2014
Richard Markowitz
Adam LaRosa

As to the question of whether the performance of services for the Michelle Plan results in the service provider being a disqualified person, while there is no direct guidance on this issue, it is possible to make the argument that a service provider such as Solo does not become a disqualified person until the agreements to provide services are entered into and, therefore, the initial transaction between the plan and such service provider would not be prohibited. However, the Department of Labor ("DOL") could take the position that an exemption is necessary for even the initial transaction to avoid being a prohibited transaction. In addition, if the Michelle Plan were to enter into identical or nearly identical transactions with Solo, the DOL could well view Solo as a disqualified person upon it entering into the second (and such subsequent) such transaction, even if it would not have challenged the first. In this event, Solo (and any other service provider) would need to show that they had met the requirements for an exemption for their activities with respect to the Michelle Plan.

D.      **Exemptions**

The Code provides for exemptions to the prohibited transaction rules.[9] Section 4975(d)(2) of the Code provides an exemption, called the "Service Provider Exemption", from the prohibited transaction provisions of Section 4975(c) for "any contract, or reasonable arrangement, made with a disqualified person for other services necessary for the ... operation of

---

[9] Section 4975(d)(2) also provides an exemption for transactions for certain of the prohibited transactions for a disqualified person other than a fiduciary (or an affiliate) who has or exercises any discretionary authority or control with respect to the investment of the plan assets involved in the transaction or renders investment advice with respect to the assets, solely by reason of providing services to the plan but only if the plan receives no less than, and pays no more than, adequate consideration. It is not clear how the concept of "adequate" consideration applies to loans. In addition, this exemption does not exempt prohibited transactions under Section 4975(c)(1)(D), (E) or (F).

Michelle

HIGHLY CONFIDENTIAL   PRIVILEGED - SUBJECT TO 502(d) ORDER                    JHVM_0010580

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                  - 9 -                              June 20, 2014
Richard Markowitz
Adam LaRosa

the plan, if not more than reasonable compensation is paid therefor".[10] The contract or arrangement also must permit termination by the plan without penalty on reasonably short notice under the circumstances to prevent the plan from being locked into an arrangement that has become disadvantageous.

In addition, Section 4975(d)(b) of the Code provides an exemption for the receipt by a disqualified person of any reasonable compensation for services rendered or the reimbursement of expenses actually and properly incurred in the performance of duties with the plan (so long as the person is not also receiving full time pay by the employer or employee organization maintaining the plan). As with the Service Provider Exemption, the compensation must be "reasonable."

The Treasury Regulations provide that, generally, whether compensation is reasonable depends on the particular facts and circumstances of each case[11]. However, any compensation which would be considered excessive under Section 1.162-7 of the Treasury Regulations will not be reasonable for purposes of these exemptions.[12] Therefore, the burden of proving that no prohibited transaction has occurred would be on the service provider, as well as on the fiduciary of the Plan involved. The reasonableness of any fee will ultimately be a facts and circumstances question.

---

[10] Certain of the exemptions under Section 4975, including this exemption do not apply to certain transactions in which a plan lends money or pays compensation or buys or sells from or to an owner-employer or certain parties related to an owner employee. We understand that these facts are not present in this case.
[11] Treasury Regulation 54.4975-6(e)(2).
[12] Treasury Regulation 54.4975-6(e)(6).

Michelle

HIGHLY CONFIDENTIAL  PRIVILEGED - SUBJECT TO 502(d) ORDER                JHVM_0010581

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                              - 10 -                              June 20, 2014
Richard Markowitz
Adam LaRosa

      As discussed herein, the arrangement between the Michelle Plan and Solo provides for payment to Solo of 66% of the gross amount payable from the transactions; from this amount Solo is required to pay significant expenses associated with the transaction which expenses are in addition to any fees paid by the Michelle Plan. If this 66% were to be viewed as a fee for services, or compensation, to Solo, it would appear to be large compared to many investment fee relationships. However, the 66% represents the gross amount payable to Solo so that after the payment of its fees to third parties (including trading commissions, legal fees, brokerage fees, accounting fees, reclaim services, custodial service fees, leverage providing fees and guaranty fees paid by Solo), Solo's net "compensation" was less than the 66% and perhaps considerably less.

      Given the size of the payments to Solo in this matter, we would expect the DOL to closely scrutinize the fee by looking at the fees charged for similar services, if any, as well as the time and effort expended by Solo. We would also expect that the DOL would look at how much of the amount is actually compensation to Solo and how much is payment to third party providers, and to what extent the payment to third party providers is reasonable compensation. In this regard, we understand that Solo and other unrelated providers have and do provide similar arrangements to other investors (both plans and non-plan investors) under arrangements in which the investors share of the net proceeds is as low as 10%[13]. We also understand from you that the trustees of the Michelle Plan were not able to find a provider which would provide similar investment services at a lower cost. This indicates that the amounts paid to Solo are consistent

---

[13] Because these are private contractual relationships, the details of these transactions are not available to us. Michelle

HIGHLY CONFIDENTIAL   PRIVILEGED - SUBJECT TO 502(d) ORDER                                    JHVM_0010582

**KAYE SCHOLER LLP**

| | | |
|---|---|---|
| John H. van Merkensteijn, III<br>Matthew R. Stein<br>Jerome Lhote<br>Richard Markowitz<br>Adam LaRosa | - 11 - | June 20, 2014 |

with or less than those charged other investors. In addition, many hedge fund managers charge a fee of 20% or more of profits (we understand that some managers charge a fee of up to 50% of profits), which indicates that market demands often result in arrangements for fees which appear large but which are deemed by investors as appropriate to attempt to obtain a desired return.[14]

In addition, we would expect that the analysis would consider how much of a return the Michelle Plan received, compared to that of Solo and other service providers. We understand that the return to the Michelle Plan has been very favorable even after the payments to Solo.

While the documentation of the transaction cannot be ignored, it should also be noted that the intent of the parties was that the arrangement was in the nature of a partnership in which each partner would receive a portion of the gross amount, with Solo bearing all of the costs. In this context, the provision of a larger allocation to Solo reflects the agreement of the parties that Solo was essential to the transactions, that the transactions might otherwise not have been possible, and that Solo was incurring large expenses to effectuate the transactions.

The Treasury Regulations provide that the Service Provider Exemption does not apply to "self dealing transactions by fiduciaries" – that is, fiduciaries dealing with the income or assets of a plan in their own interest or for their own account or receiving consideration for their own personal account from any person dealing with a plan. We understand that none of the trustees of the Michelle Plan are receiving or have received any direct or indirect benefit or gain from these transactions.

---

[14] These fees are often part of a complex fee structure which often results in lower fees if certain hurdles are not met. Michelle

HIGHLY CONFIDENTIAL  PRIVILEGED - SUBJECT TO 502(d) ORDER                                                    JHVM_0010583

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                    - 12 -                              June 20, 2014
Richard Markowitz
Adam LaRosa

      **E.**    **Application to Service Providers**

      It is possible that Solo could be a "fiduciary" (described in Appendix A) with respect to the Michelle Plan. If so, the DOL could take the position that the Service Provider Exemption does not apply if Solo uses its authority, control or responsibility to cause the plan to pay additional fees to it or otherwise pay fees which may benefit Solo or influence its judgment as a fiduciary. This could be the case, for example, if Solo could authorize additional, unnecessary trades which resulted in increased fees to it. In this regard, you have informed us that Solo has no authority over the fees, and no authority to authorize additional fees or additional trades that could result in additional fees, but that all such trades are authorized on behalf of the Plans by Mr. LaRosa and that Solo merely effectuates those orders.

      As described in this memorandum, Mr. LaRosa has performed services for the Michelle Plan, and therefore is a service provider and is likely also a fiduciary. We understand that Mr. LaRosa is also a disqualified person because of his ownership of a profits interest in Argre.[15] The compensation paid to him will need to qualify under the Service Provider Exemption (or other exemption) and so must be "reasonable". While this is a question of fact, we understand that substantial work is involved on Mr. LaRosa's part and so the fee of $5,000 would not seem unreasonably large. We also understand from you that Mr. LaRosa does not have any authority to cause this fee to be paid or to increase the amount of the fee.

---

[15] Mr. LaRosa would also appear to be a disqualified person under Section 4975(e)(2)(I) of the Code because he is a 10% or more partner in Argre, which is an entity in which 50% or more of the partnership interests are held by trustees of the Michelle Plan.

Michelle

**HIGHLY CONFIDENTIAL   PRIVILEGED - SUBJECT TO 502(d) ORDER**    JHVM_0010584

**KAYE SCHOLER LLP**

| | | |
|---|---|---|
| John H. van Merkensteijn, III<br>Matthew R. Stein<br>Jerome Lhote<br>Richard Markowitz<br>Adam LaRosa | - 13 - | June 20, 2014 |

Payment for the services performed by the third party service provider who files the tax reclaim form or other providers who Solo may pay to perform related services could also be a prohibited transaction unless it meets the Service Provider Exemption (or other exemption). This compensation seems less burdensome on the Michelle Plan than the fees paid to Solo and, for this reason, we believe less likely to be challenged by the DOL, although as noted in the Facts, Solo does not break out the amount of those fees and disclose them to investors.

### F. Extension of Credit

As noted above, an extension of credit between a plan and a disqualified person constitutes a prohibited transaction. The DOL could look at Solo's guaranty of the trades as an extension of credit to the Michelle Plan rather than a service in connection with this investment or as an advance to cover direct expenses which are to be repaid, and take the position that the extension of credit is not exempted by the Service Provider Exemption. It could be argued that the guaranty is a necessary service in order to enter into the investment, and that the Service Provider Exemption should apply to exempt the guaranty, if its requirements are met. This would give Solo the burden of proving that the fees were reasonable and necessary. Again, even if the DOL did not view Solo as a disqualified person in the initial transaction between it and the Michelle Plan, it could take the position that Solo became a disqualified person when later transactions were consummated.

The DOL has issued an exemption for certain securities lending transactions but those are not discussed in this memorandum since it is our understanding that Solo will not receive

Michelle

HIGHLY CONFIDENTIAL   PRIVILEGED - SUBJECT TO 502(d) ORDER          JHVM_0010585

**KAYE SCHOLER** LLP

| | | |
|---|---|---|
| John H. van Merkensteijn, III<br>Matthew R. Stein<br>Jerome Lhote<br>Richard Markowitz<br>Adam LaRosa | - 14 - | June 20, 2014 |

compensation for securities lending services that will be entered into with an unrelated third party which is not a disqualified person.

### G.    Other Issues

The Facts section in this memorandum is intended to provide the factual basis for other memorandum, and so all facts may not be required for the analysis hereunder. This memorandum does not address other issues other than those specifically addressed herein.

Michelle

HIGHLY CONFIDENTIAL  PRIVILEGED - SUBJECT TO 502(d) ORDER               JHVM_0010586

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                     - 15 -                                     June 20, 2014
Richard Markowitz
Adam LaRosa

Appendix A - Terms

This Appendix A briefly describes certain terms used in this memorandum.[16]

**Definition of a Prohibited Transaction.** A prohibited transaction includes (i) the sale or exchange of any property between, or the lending of money or any other extension of credit between, or the furnishing of goods or services between, a plan and a disqualified person (Section 4975(c)(1)(A), (B) and (C)), (ii) a transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan (Section 4975(c)(1)(D)), (iii) the act by a fiduciary whereby he deals with the plan income or assets in his own interest or for his own account (Section 4975(c)(1)(E)), or (iv) or the receipt of any consideration for his own personal account by a disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan (Section 4975(c)(1)(F)).

**Definition of a Disqualified Person.** Section 4975(e)(2) defines a disqualified person to include: (A) a fiduciary; (B) a person providing services to the plan; (C) an employer any of whose employees are covered by the plan; (D) an employee organization any of whose members are covered by the plan; (E) an owner, direct or indirect, of 50% or more of the combined voting power of all classes of stock entitled to vote or total value of shares of all classes of stock of a corporation, or of the capital interest or profits interest of a partnership or of the beneficial interest of a trust or unincorporated enterprise which is an employer or employee organization described in (C) or (D); (F) a member of the family (as defined) of any individual described in (A), (B), (C) or (E); (G) a corporation, partnership or trust or estate of which (or in which), 50%

---

[16] These terms are defined in Section 4975 of the Code and this discussion is subject to those definitions.
Michelle

HIGHLY CONFIDENTIAL   PRIVILEGED - SUBJECT TO 502(d) ORDER                               JHVM_0010587

**KAYE SCHOLER LLP**

| | | |
|---|---|---|
| John H. van Merkensteijn, III<br>Matthew R. Stein<br>Jerome Lhote<br>Richard Markowitz<br>Adam LaRosa | - 16 - | June 20, 2014 |

or more of the combined voting power of all classes of stock entitled to vote or total values of shares of all classes of stock of a corporation, or of the capital interest or profits interest of a partnership or of the beneficial interest of a trust or estate, is owned directly or indirectly or held by persons described in (A), (B), (C), (D) or (E); (H) an officer, director (or person having similar powers or responsibilities), a 10% or more shareholder, or a highly compensated person (earning 10% or more of the yearly wages of an employer) of a person described in (C), (D), (E) or (G); or (I) a 10% or more (in capital or profits) partner or joint venturer of a person described in paragraphs (C), (D), (E) or (G).

**Definition of Fiduciary**. Section 4975(e)(3) defines "fiduciary" as any person who (i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of the plan or has any authority or responsibility to do so, or (iii) has any discretionary authority or discretionary responsibility in the plan administration.

\* \* \* \* \*

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michelle

HIGHLY CONFIDENTIAL   PRIVILEGED - SUBJECT TO 502(d) ORDER                    JHVM_0010588